IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: ESSIE STAMPS<br><br>v.<br><br>AMERICAN HOME PRODUCTS CORPORATION, et al. | CIVIL ACTION NO. 11-20003<br><br>2:16 MD 1203 |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8862**

Bartle, J.                                              April 10, 2012

Before the court is the motion of plaintiff Essie Stamps ("Ms. Stamps") to remand her claims against defendants Wyeth[1] and Dr. Curtis Harris, M.D. ("Dr. Harris") to the District Court for Oklahoma County, Oklahoma on the ground that complete diversity of citizenship is lacking. See 28 U.S.C. § 1332.

I.

Plaintiff, a citizen of Oklahoma, has sued Wyeth, the manufacturer of Pondimin and Redux ("Diet Drugs"), as well as Dr. Harris, the physician who allegedly prescribed her Diet Drugs. Wyeth is diverse of citizenship from plaintiff while Dr. Harris is not. Plaintiff asserts claims for: (1) negligence; (2) negligence per se; (3) strict liability; (4)

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation ("AHP").

breach of warranties; (5) deceit by concealment; (6) negligent misrepresentation; (7) fraud and deceit; (8) negligence; (9) recklessness; (10) gross neglect; (11) punitive damages; and (12) violations of Oklahoma's Consumer Protection and Deceptive Trade Practices acts. No federal claim for relief is alleged.

Ms. Stamps originally filed her complaint in the District Court of Oklahoma County, Oklahoma on September 7, 2010. Wyeth removed the action to the United States District Court for the Western District of Oklahoma on the ground that plaintiff fraudulently joined Dr. Harris and that his citizenship should be disregarded for purpose of determining diversity jurisdiction. The action was then transferred to this court as part of MDL 1203.

II.

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a). Complete diversity, however, is required. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). If an action originally filed in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court if they are not

citizens of the state in which the action was originally filed. 28 U.S.C. §§ 1441(a) & (b), 1446. If a federal court subsequently determines that it does not have subject matter jurisdiction over a removed action or the proper removal procedures were not followed, it must remand the action to the state court. See 28 U.S.C. § 1447(c); Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995).

Wyeth bears a heavy burden in seeking to have the court ignore the citizenship of the non-diverse defendant, Dr. Harris, on the ground that he was fraudulently joined. See Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). In determining whether Wyeth has met its burden, we must "resolve all contested issues of substantive fact in favor of the plaintiff." Id. We are also cognizant of the fact that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted). The heavy burden placed upon Wyeth to establish fraudulent joinder does not mean we must accept blindly whatever plaintiff may assert no matter how incredible or how contrary to the overwhelming weight of the evidence. The Supreme Court made it clear in Wilson v. Republic Iron & Steel Co. that if a plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence. 257 U.S. 92

(1921). We are not to decide automatically in favor of remand simply because some facts may be in dispute.

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); In re Ikon Office Solutions, Inc., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000). This court must decide whether there is "a reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer, 913 F.2d at 111.

On matters of substantive law, "if there is even a possibility that a state court would find that a plaintiff's complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. (citation omitted). We are mindful that our inquiry into Wyeth's claim of fraudulent joinder is less searching than what is permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992); see also Gaul v. Neurocare Diagnostic, Inc., No. 02-2135, 2003 WL 230800, at *2 (E.D. Pa. Jan. 3, 2003). Simply because a claim against a party may ultimately be dismissed for failure to state a claim or is otherwise barred does not necessarily mean that the party was fraudulently joined. The test is whether a claim is colorable, that is, not "wholly insubstantial and frivolous." Batoff, 977 F.2d at 852.

III.

In support of removal jurisdiction, Wyeth argues that the claims against Dr. Harris are barred by Oklahoma's medical negligence statute of limitations, which provides in relevant part:

> An action for damages for injury or death against any physician ... licensed under the laws of this state ... shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the ... injury or condition complained of.

Okla. Stat. tit. 76, § 18. Ms. Stamps concedes that her claims against Dr. Harris are barred by the statute of limitations unless the statute has been tolled by the discovery rule, which is incorporated into the medical malpractice limitations statute cited above. Wing v. Lorton, 261 P.3d 1122, 1125-26 (Okla. 2011). The Supreme Court of Oklahoma has explained:

> In the majority of malpractice cases ... the injury occurs contemporaneously with the negligent act. In those cases the general rule of accrual applies. However, sometimes the injury is manifested after the wrongful act or omission responsible for the medical negligence action. In that case, a two-year limitations period begins to run from the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of. This "discovery rule" encompasses the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations.

Id.; see also Okla. Stat. tit. 76, § 18.

Based on the above, plaintiff asserts that her September 7, 2010 complaint asserting claims against Dr. Harris is timely under Oklahoma's discovery rule because she was first informed on September 10, 2008 that her pulmonary hypertension was caused by Diet Drugs. In the alternative, plaintiff argues that Wyeth's removal was not timely because it was filed seven months after her medical records, on which Wyeth relies, were produced.

Wyeth responds that plaintiff testified in her deposition that during the 2006-2007 time frame Dr. Kenneth Wong informed her that there might be a correlation between Pondimin and her diagnosis of pulmonary hypertension. This was more than two years before she filed her complaint, on September 7, 2010. Wyeth further argues that plaintiff's medical records alone were insufficient to put Wyeth on notice that the possible correlation between plaintiff's Diet Drug use and her pulmonary hypertension was communicated to Ms. Stamps.

IV.

Wyeth has established that Dr. Harris was fraudulently joined and, therefore, should not be considered for purposes of determining whether diversity jurisdiction exists. Although Ms. Stamps points to the portion of her testimony where she stated that she "didn't know what really caused" her pulmonary hypertension at the time she visited Dr. Wong, she also testified that Dr. Wong suggested to her there "might" be a correlation between her Diet Drug use and her pulmonary hypertension. This

is all that the discovery rule requires. See Okla. Stat. tit. 76, § 18 (emphasis added); Samuel Roberts Noble Found., Inc. v. Vick, 840 P.2d 619, 626 (Okla. 1992); Queri v. Midwest City Mem. Hosp., 839 P.2d 688, 690 (Okla. 1992).

We disagree with Ms. Stamps that her deposition testimony creates an issue of fact for the fact finder. When asked to identify the first physician who diagnosed her with pulmonary hypertension, Ms. Stamps responded that she could not remember. This testimony, however, is not inconsistent with her testimony that Dr. Wong told her Diet Drugs might be the cause of her condition. Likewise, plaintiff's testimony that she did not tell Dr. Wong she had taken Diet Drugs does not create an issue of fact pertaining to whether Dr. Wong told her about the potential correlation between Diet Drugs and her lung condition. Dr. Wong, we note, was aware of plaintiff's Diet Drug use because he specifically noted in her medical records that Ms. Stamps had a history of "phen/fen use."

In addition, the errata sheet submitted by plaintiff following her deposition does not require submission of this issue to a finder of fact. Specifically, she submitted the following changes to her deposition testimony:

> Q. Do you ever remember Dr. Wong talking to you about some of the potential causes of pulmonary hypertension?
>
> A. One thing he did say, he says, "I believe that - that the diet drug might have done that," something to that effect, a remark like that.

>    **CORRECTION: Delete lines 24-25 and substitute with "I do not recall Dr. Wong talking about that."**
>
>    . . . .
>
>    Q.   And you do recall him saying there might be a correlation between Pondimin and that diagnosis?
>
>    A.   Yes.
>
>    **CORRECTION: Delete "Yes" and substitute "I do not recall that."**

An errata sheet "is to be used for corrective, and not contradictory, changes." Hambleton Bros. Lumber, Inc. v. Balkin Enters., Inc., 397 F.3d 1217 (9th Cir. 2005). A party is not permitted to manufacture an issue of fact by re-tailoring sworn deposition testimony through substantive changes on an errata sheet. EBC, Inc. v. Clark Bldg. Sys., 618 F.3d 253 (3d Cir. 2010).

Accordingly, there is not a reasonable basis in fact or a colorable ground that plaintiff has a timely claim against Dr. Harris.

V.

We also reject plaintiff's claim that Wyeth's removal of the action was untimely. The time for removal is governed by 28 U.S.C. § 1446(b). Under the general rule, "a notice of removal of a civil action ... shall be filed within thirty days after receipt by the defendant of a copy of the initial pleading." Id. § 1446(b)(1). Where, as here, the case is not removable upon the initial pleading, "a notice of removal may be

filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or <u>other paper</u> from which it may first be ascertained that the case is one which is or has become removable." <u>Id.</u> § 1446(b)(3) (emphasis added).

Plaintiff argues that because her medical records were received by Wyeth's counsel on February 19, 2011, "[d]efendant's [sic] first received an 'other paper' from which it could be ascertained that the case is one which had become removable" and therefore Wyeth's removal on September 7, 2011 was "outside the thirty-day window in which to file their notice of removal." <u>Id.</u> Ms. Stamps, however, has not pointed to, nor did we find, anything within her medical records suggesting Dr. Wong communicated the possibility of a correlation between her ingestion of Diet Drugs and her lung condition. The medical records merely indicate that plaintiff's doctors diagnosed her with pulmonary hypertension, and that her doctors believed the condition may be correlated to her ingestion of Diet Drugs. Without evidence that plaintiff was made aware of that correlation, by her doctors or otherwise, Wyeth would not have a basis to assert that plaintiff's claims against Dr. Harris were barred by the statute of limitations or to remove the case on fraudulent joinder grounds. See <u>Lancaster v. Hale</u>, 152 P.3d 890, 891, 893 (Okla. Civ. App. 2007); <u>In re Diet Drugs</u>, MDL No. 1203, 2008 U.S. Dist. LEXIS 63573, at *8-9, *13-14 (E.D. Pa. Aug. 19, 2008).

It was during plaintiff's deposition on August 29, 2011 that Wyeth first learned Dr. Wong had communicated the possibility of a correlation between plaintiff's use of Diet Drugs and her pulmonary hypertension, triggering the thirty-day deadline under § 1446(b)(3). See Rehman v. Basic Moving, No. 09-248, 2009 U.S. Dist. LEXIS 41281, at *17-18 (W.D. Pa. May 15, 2009). Accordingly, Wyeth timely removed this action on September 7, 2011 within the required thirty day period. See 28 U.S.C. § 1446(b)(3).

VI.

Based on the foregoing, we will deny the motion of the plaintiff to remand this action to the District Court of Oklahoma County, Oklahoma.